McRAE, Justice,
dissenting:
¶ 16. There is no reason why, even in an emergency, that county and municipal governments should be given carte blanche to spend the taxpayers’ money without any accountability whatsoever. While Miss. Code Ann. § 33-15-3 (Supp.1999) allows political subdivisions to work together in an emergency, the statute does not permit governmental entities to ignore the requirements of Miss.Code Ann. § 31-7-13(k) (Supp.1999). Because I believe the statutes can and should be read together, I dissent.
¶ 17. “In construing statutes, all statutes in pari materia are taken into consideration, and a legislative intent deduced from a consideration as a whole.” Roberts v. Mississippi Republican Party State Executive Comm., 465 So.2d 1050, 1052 (Miss.1985). Both Miss.Code Ann. § 31-7-13(k) and §§ 33-15-1 et seq. deal with governmental entities’ power to make purchases in emergency situations. Not only can the statutes be construed together, the facts of this case illustrate why the two statutes should be read together — without the requirements contained in section 31-7-13(k), local governments have no checks and balances on their expenditures.
¶ 18. In this case, when the ice storm of the February, 1994, paralyzed the Mississippi Delta, the Bolivar County Board of Supervisors convened to proclaim a state of emergency. In order to facilitate emergency relief efforts, the Board of Supervisors opened up a charge account at a Wal-Mart in Cleveland, Mississippi, and authorized two persons with the Bolivar County Civil Defense Office to make purchases. One of these persons was Lee Tedder.
¶ 19. On February 13, 1994, the Mayor of the Town of Winstonville came to the Bolivar County Civil Defense Office with a list of items needed by his town including a *797 generator, flash lights, candles, ice, and batteries. Tedder gave the Mayor a letter on the Civil Defense Board stationery which read: “Charge the items that the Town of Winstonville needs to the Bolivar County Civil Defense.” The Mayor took the letter to Wal-Mart and, after the store verified by phone that he was authorized to do so, allowed the Mayor to charge items totaling $164.36. The Mayor kept the letter, and in the following days he and/or his representatives charged a total of $19,652.42 to the County’s account.
¶ 20. The county court acted as the trier of fact in this case and it found that the Town of Winstonville was not authorized to make purchases beyond the initial expenditure of $164.36. This being so, I find nothing in the law which would make Bolivar County liable for purchases made by the Town of Winstonville on the County’s account where those charges were not authorized by the County.
¶ 21. Accordingly, I dissent.
SULLIVAN, P.J., joins this opinion.